# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

QUENTON SHELBY,

      Plaintiff,

v.                            Case No. 17-cv-00224-W-DGK

OAK RIVER INSURANCE COMPANY,

      Defendant.

## DEFENDANT'S REPLY SUGGESTIONS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Oak River Insurance Company ("Oak River") submits the following Reply Suggestions in Support of its Motion for Summary Judgment under Federal Rule of Civil Procedure 56 and Local Rule 56.1.

## Table of Contents

Table of Authorities ................................................................................................ ii

Statement of Uncontroverted Material Facts ...................................................................1

Introduction .............................................................................................................11

Analysis and Argument ............................................................................................12

A.     Plaintiff Overstates the Standard to Determine a Duty to Defend ...............................12

B.     Estoppel Does Not Apply .............................................................................14

C.     Financing Activities Are Not Necessary and Incidental to a Garage Business .............14

D.     There Was No Bodily Injury or Property Damage Alleged ................................16

E.     Lack of an Accident ...................................................................................17

F.     Exclusions for Expected or Intended Injury and Loss of Use Exclude Coverage .........18

G.     Because There is No Duty to Defend, There is No Duty to Indemnify ..........................19

Conclusion .................................................................................................................20

4815-4608-5465.5

# TABLE OF AUTHORITIES

**Cases**  Page(s)

*Allen v. Cont'l W. Ins. Co.*,
   436 S.W.3d 548 (Mo. 2014) ......................................................................................2, 3, 7, 8

*Brown v. State Farm Mut. Auto. Ins. Co.*,
   776 S.W.2d 384 (Mo. 1989) ..............................................................................................14

*Burns v. Smith*,
   303 S.W.3d 505 (Mo. 2010) ................................................................................................2

*Cedar Hill Hardware & Const. Supply, Inc. v. Ins. Corp. of Hannover*,
   563 F.3d 329 (8th Cir. Mo. 2009) ......................................................................................14

*Columbia Cas. Co. v. HIAR Holding, L.L.C.*,
   411 S.W.3d 258 (Mo. 2013) ........................................................................................16, 18

*Connecticut Indem. Co. v. DER Travel Serv., Inc.*,
   328 F.3d 347 (7th Cir. 2003) ..............................................................................................13

*Country Mut. Ins. Co. v. Cronin*,
   17 F. Supp. 3d 900 (E.D. Mo. 2014).....................................................................................2

*Esicorp, Inc. v. Liberty Mut. Ins. Co.*,
   193 F.3d 966 (8th Cir. 1999) ..............................................................................................12

*FACE, Festivals & Concert Events, Inc. v. Scottsdale Ins. Co.*,
   632 F.3d 417 (8th Cir. 2011) ...........................................................................................2, 3

*First Cmty. Credit Union v. Levison*,
   395 S.W.3d 571 (Mo. Ct. App. 2013)................................................................3, 17, 18, 19

*Hartford Ins. Co. of the Midwest v. Wyllie*,
   396 F. Supp. 2d 1033 (E.D. Mo. 2005)........................................................................17, 20

*Hortica-Florists' Mut. Ins. Co. v. Pittman Nursery Corp.*,
   729 F.3d 846 (8th Cir. 2013) ..............................................................................................16

*Hortica-Florists' Mut. Ins. Co. v. Pittman Nursery Corp.*,
   No. 07-CV-1119, 2010 WL 749368 (W.D. Ark. Mar. 2, 2010) ..........................................16

*Interstate Bakeries Corp. v. OneBeacon Ins. Co.*,
   686 F.3d 539 (8th Cir. 2012) ..............................................................................................12

*Medmarc Cas. Ins. Co. v. Avent Am., Inc.*,
   612 F.3d 607 (7th Cir. 2010) ..............................................................................................11

4815-4608-5465.5

*State of Neb. ex rel. Nelson v. Cent. Interstate Low-Level Radioactive Waste
Comm'n,*
26 F.3d 77 (8th Cir. 1994) ...........................................................................................7

*New Hampshire Ins. Co. v. Hill,*
2012 WL 3685500 (S.D. Ala. Aug. 23, 2012), *aff'd*, 516 F. App'x 803 (11th
Cir. 2013) ...................................................................................................................19

*Noran Neurological Clinic, P.A. v. Travelers Indem. Co.,*
229 F.3d 707 (8th Cir. 2000) .....................................................................................2, 3

*Olga Despotis Trust v. Cincinnati Ins. Co.,*
867 F.3d 1054 (8th Cir. Mo. 2017) ..............................................................................1

*Rinehart v. Anderson,*
985 S.W.2d 363 (Mo. Ct. App. 1998) .........................................................................15

*Schnuck Markets, Inc. v. Transamerica Ins. Co.,*
652 S.W.2d 206 (Mo. Ct. App. 1983) ........................................................................2, 3

*Trainwreck W. Inc. v. Burlington Ins. Co.,*
235 S.W.3d 33 (Mo. Ct. App. 2007) .................................................................. *passim*

*United Fire & Cas. Co. v. Titan Contractors Serv., Inc.,*
751 F.3d 880 (8th Cir. Mo. 2014) ...............................................................................19

*Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.,*
401 F.3d 876 (8th Cir. 2005) ......................................................................................16

*The Upper Deck Co., LLC v. Fed. Ins. Co.,*
358 F.3d 608 (9th Cir. 2004) ......................................................................................13

*Wolfe Auto. Grp., LLC v. Universal Underwriters Ins. Co.,*
808 F.3d 729 (8th Cir. 2015) ................................................................................14, 15

## Statutes

RSMo § 408.555 ...............................................................................................................4

RSMo § 408.557 ...............................................................................................................5

## Other Authorities

http://www.dictionary.com/browse/garage?s=t ...........................................................15

https://www.merriam-webster.com/dictionary/garage ................................................15

4815-4608-5465.5

<u>**Response to Plaintiff's Statement of Additional Material Facts**</u>

1. The Policies state MIG's "garage business" is "described in the Declarations."

   **RESPONSE: Denied and objected to as immaterial and misleading to the issues contained in Oak River's Motion for Summary Judgment. The Policies at issue are garage policies, which provide different options regarding the type of autos that can be selected as covered autos for different types of coverages.** *See* **Doc 24-1, p. 8; p. 32. Plaintiff's sweeping statement in this purported fact is apparently referring to the description of Covered Auto Designation Symbol 29 for Non-Owned "Autos" Used in Your Garage Business. MIG did not purchase Coverage for Symbol 29 such that its hypothetical interpretation is immaterial.** *See Olga Despotis Trust v. Cincinnati Ins. Co.*, **867 F.3d 1054, 1060 (8th Cir. Mo. 2017).**

2. The Declarations describe MIG's business as a "used car dealer."

   **RESPONSE: Admitted that the Business Description on the Declarations is Used Car Dealer.**

3. MIG sells used vehicles to many customers who cannot afford to purchase vehicles with cash by having the customer enter into a retail installment contract and security agreement.

   **RESPONSE: Admitted, but immaterial. The fact that MIG also provides financing services to its customers who cannot afford to purchase vehicles with cash is immaterial to the issues contained in Oak River's Motion for Summary Judgment, given that the Policies at issue are garage policies providing coverage for garage operations, not MIG's financing activities.**

4. MIG isn't in the business of, and doesn't, repair, park, tow, or store customer's autos.

   **RESPONSE: Admitted, but immaterial to the issues contained in Oak River's Motion for Summary Judgment. Regardless of whether MIG performs garage functions, it purchased garage policies through an insurance broker.**

5. For over 2,350 class members, it was necessary or incidental to MIG's performance of its business as a used car dealer to repossess vehicles and commence collection activity against consumers after they fell behind on payments under the retail installment contract and security agreement.

   **RESPONSE: Denied and objected to on the basis that it is a legal conclusion as to what is "necessary or incidental," terms used in the Policies. Moreover, in Missouri, the interpretation of an insurance policy (i.e. what is necessary or incidental to a**

garage business) is a question of law for the Court. *Country Mut. Ins. Co. v. Cronin*, 17 F. Supp. 3d 900, 905 (E.D. Mo. 2014); *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010). Plaintiff's use of a self-serving affidavit of MIG to support this purported fact is essentially a party asserting his interpretation of provisions of an insurance policy, which is not permissible under Missouri and 8th Circuit law. *See Schnuck Markets, Inc. v. Transamerica Ins. Co.*, 652 S.W.2d 206, 212 (Mo. Ct. App. 1983); *Noran Neurological Clinic, P.A. v. Travelers Indem. Co.*, 229 F.3d 707, 710 (8th Cir. 2000); *FACE, Festivals & Concert Events, Inc. v. Scottsdale Ins. Co.*, 632 F.3d 417, 421 (8th Cir. 2011). Likewise, this information is immaterial to whether duty to defend given that this information was not known at the time the Counterclaim was presented to Oak River. *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 553 (Mo. 2014); *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 39 (Mo. Ct. App. 2007) (later discovered facts are not considered in determining duty to defend). For instance, the number of class members were not known to MIG at the time the duty to defend had to be considered. To the extent the Court considers interpretation of the Policies by others, MIG's insurance agent Mike Scott indicated to Oak River that he "did not believe [the Counterclaim] was covered and that was fine." *See Doc 26-3, p. 2.*

6. MIG hired lawyers to assist it in seeking deficiency balances from Shelby and the class members in the Underlying Litigation, including providing all legal notices to them. See Doc. 24-13, ¶ 13. The lawyers held themselves out as having expertise in providing such legal services. Id.

   **RESPONSE: Admitted, but immaterial given that the Policies at issue are garage policies providing coverage for garage operations, not MIG's financing activities.**

7. MIG's lawyers provided MIG with a form of a pre-sale notices to be sent to Shelby and the class members in the Underlying Litigation. Id. at ¶ 14.

   **RESPONSE: Admitted, but immaterial given that the Policies at issue are garage policies providing coverage for garage operations, not MIG's financing activities.**

8. MIG didn't intend to violate Chapter 408 or the UCC and did not intend injury to the class because it believed its notices were accurate, lawful and contained no misrepresentations. See Doc. 24-13, generally; see also Doc. 24-10, ¶ 6; Doc. 26-2, ¶¶ 9–10.

   **RESPONSE: Denied and objected to on the basis that it is a legal conclusion. Moreover, in Missouri, the interpretation of an insurance policy is a question of law for the Court. *Country Mut. Ins. Co. v. Cronin*, 17 F. Supp. 3d 900, 905 (E.D. Mo. 2014); *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010). Plaintiff's use of a self-serving**

2

affidavit of MIG to support this purported fact is essentially a party asserting his interpretation of provisions of an insurance policy, which is not permissible under Missouri and 8th Circuit law. *See Schnuck Markets, Inc. v. Transamerica Ins. Co.*, 652 S.W.2d 206, 212 (Mo. Ct. App. 1983); *Noran Neurological Clinic, P.A. v. Travelers Indem. Co.*, 229 F.3d 707, 710 (8th Cir. 2000); *FACE, Festivals & Concert Events, Inc. v. Scottsdale Ins. Co.*, 632 F.3d 417, 421 (8th Cir. 2011). To the extent the Court considers interpretation of the Policies by others, MIG's insurance agent Mike Scott indicated to Oak River that he "did not believe [the Counterclaim] was covered and that was fine." *See* Doc 26-3, p. 2. Likewise, this information is immaterial to whether duty to defend given that this information was not known at the time the Counterclaim was presented to Oak River. *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 553 (Mo. 2014); *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 39 (Mo. Ct. App. 2007) (later discovered facts are not considered in determining duty to defend). This purported fact is supported by the agreed-upon settlement final order, MIG's legal malpractice lawsuit filed after the settlement, and the affidavit of a representative of MIG executed specifically in response to Oak River's Motion for Summary Judgment. None of this information was available to Oak River at the time the Counterclaim was submitted to Oak River. To this extent MIG wanted to provide this information to Oak River, it failed to do so in spite of multiple requests by Oak River to MIG and its representatives for any additional information it would like Oak River to consider in evaluating its claim. *See* Doc 24-6*; see also* Exhibit 1, attached, February 13, 2013 Fax. Likewise, Plaintiff specifically alleged in the Counterclaim that he was "seeking relief to redress an unlawful and deceptive pattern of wrongdoing" by MIG. See Doc 24-4, p. 2. This has been described as "fraud/misrepresentation;" fraud is an intentional act. *First Cmty. Credit Union v. Levison*, 395 S.W.3d 571 (Mo. Ct. App. 2013).

9. Oak River conducted no investigation to learn who drafted MIG's notices.

**RESPONSE: Denied. This purported fact is not supported by citation. Doc 26-3 includes only a small portion of the claim file generated by Oak River. (Plaintiff conveniently neglected to provide the entirety of the claim file. The Court will note that Doc 26-3 skips from Bates No. Oak River 0004 to Oak River 00666.) Nothing in Doc 26-3 indicates that Oak River did not conduct an investigation. Oak River did conduct an investigation. Likewise, Oak River twice requested that MIG provide it with information relative to the claims made in the Counterclaim. On February 13, 2013, Oak River responded to MIG's insurance broker requesting: "If there are items pending in connection with [the Policies] that could affect the resolut[ion] of this loss, please immediately contact Claims Operations by fax to 402-916-3031 or by email to claims@nationalindemnity.com" Exhibit 1, attached, February 13, 2013 Fax. In March 15, 2013 correspondence to MIG and MIG's attorney, Oak River indicated: "Our position is based on the information we have received to date. If you know or learn of information not already provided to us, contact us immediately. Should additional suit papers be filed against Miller Investment, we ask you forward them to us to review. We will review all new information to assure Oak River fully performs**

4815-4608-5465.5

its obligations under the Policies and applicable law." *See* Doc 24-6. MIG never provided any information to response to those requests. *Id.*

10. Oak River conducted no investigation to learn what efforts MIG went through to comply

with Chapter 408 and the UCC. Id.

**RESPONSE: Denied. This purported fact is not supported by citation. Doc 26-3 includes only a small portion of the claim file generated by Oak River. (Plaintiff conveniently neglected to provide the entirety of the claim file. The Court will note that Doc 26-3 skips from Bates No. Oak River 0004 to Oak River 00666.) Nothing in Doc 26-3 indicates that Oak River did not conduct an investigation. Oak River did conduct an investigation. Likewise, Oak River twice requested that MIG provide it with information relative to the claims made in the Counterclaim. On February 13, 2013, Oak River responded to MIG's insurance broker requesting: "If there are items pending in connection with [the Policies] that could affect the resolut[ion] of this loss, please immediately contact Claims Operations by fax to 402-916-3031 or by email to** claims@nationalindemnity.com**"** *Exhibit 1, attached, February 13, 2013 Fax.* **In March 15, 2013 correspondence to MIG and MIG's attorney, Oak River indicated: "Our position is based on the information we have received to date.  If you know or learn of information not already provided to us, contact us immediately.  Should additional suit papers be filed against Miller Investment, we ask you forward them to us to review.  We will review all new information to assure Oak River fully performs its obligations under the Policies and applicable law." *See* Doc 24-6. MIG never provided any information to response to those requests.** *Id.*

11. Oak River conducted no investigation to learn facts that would have been apparent to it

from the outset of the Underlying Litigation, including the facts alleged in Paragraph 11 of

the First Amended Petition (Doc. 24-2):

a. Under RSMo § 408.555, MIG wrongfully accelerated Class's consumer credit con-tracts

by failing to give the required right to cure notices before acceleration.

b. Under RSMo § 408.555, MIG wrongfully repossessed the Class's property by fail-ing

to give the required right to cure notices before repossession.

c. The presale notices sent to the Class were not reasonable as required by § 9-611(b).

d. MIG wrongfully sold the Class's property after sending improper right to cure and

presale notices.

4

e. The post-sale notices sent to the Class violated section § 9-616.

f. MIG sued the Class without giving the notice required by RSMo § 408.557.

g. MIG unlawfully collected or attempted to collect deficiency balances, time price differentials, and delinquency and collection charges from the Class members is-sued defective right to cure, presale and post-sale notices.

h. MIG reported derogatory information regarding the Class to local consumer report-ing agencies and the three national consumer credit reporting agencies: Equifax Credit Information Services, Inc., Experian, Inc., and TransUnion, LLC (collec-tively, "CRAs"), despite its failure to comply with the right to cure, presale and post-sale notice requirements.

i. The defective right to cure, presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the Class members' credit reports harmed the Class members' credit worthiness, credit standing, credit capacity, character, and general reputation.

j. The defective right to cure, presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the Class members' credit reports were oral or written publication of material that defamed, slandered, libeled and invaded the privacy rights of the Class members.

k. MIG acted negligently in failing to send notices complying with Missouri Chapter 408 and the Uniform Commercial Code, including the right to cure, presale and post-sale notices.

l. MIG did not intend to violate Chapter 408 or the UCC and did not intend injury to the Class because it believed its notices were accurate, lawful and contained no misrepresentations.

m. The negligent misrepresentations in the notices were the proximate cause of:

    i. the loss of use of the vehicles because it precluded the Class members from reclaiming their collateral before it was sold;

    ii. the loss of use of Class member's surplus funds owed them after the sale of the collateral;

    iii. the loss of use of the money each Class member paid, which was barred by statute and common law;

    iv. cost of alternative transportation;

    v. loss resulting from the inability to obtain, or increased costs of, alternative financing;

    vi. harm to credit worthiness, credit standing, credit capacity, character, and general reputation;

    vii. harm caused by defamation, slander and libel;

    viii. harm caused by invasion of privacy; and

n. other uncertain and hard-to-quantify actual damages.

**RESPONSE: Denied. This purported fact is not supported by citation. Doc 26-3 includes only a small portion of the claim file generated by Oak River. (Plaintiff conveniently neglected to provide the entirety of the claim file. The Court will note that Doc 26-3 skips from Bates No. Oak River 0004 to Oak River 00666.) Nothing in Doc 26-3 indicates that Oak River did not conduct an investigation. Oak River did conduct an investigation. Likewise, Oak River twice requested that MIG provide it with information relative to the claims made in the Counterclaim. On February 13, 2013, Oak River responded to MIG's insurance broker requesting: "If there are items pending in connection with [the Policies] that could affect the resolut[ion] of this loss, please immediately contact Claims Operations by fax to 402-916-3031 or by email to**

claims@nationalindemnity.com" *See* **Exhibit 1, attached, February 13, 2013 Fax. In March 15, 2013 correspondence to MIG and MIG's attorney, Oak River indicated: "Our position is based on the information we have received to date. If you know or learn of information not already provided to us, contact us immediately. Should additional suit papers be filed against Miller Investment, we ask you forward them to us to review. We will review all new information to assure Oak River fully performs its obligations under the Policies and applicable law."** *See* **Doc 24-6. MIG never provided any information to response to those requests.** *Id.*

**Moreover, this purported fact is immaterial to whether duty to defend given that this information was not known at the time the Counterclaim was presented to Oak River.** *Allen v. Cont'l W. Ins. Co.*, **436 S.W.3d 548, 553 (Mo. 2014);** *Trainwreck W. Inc. v. Burlington Ins. Co.*, **235 S.W.3d 33, 39 (Mo. Ct. App. 2007) (later discovered facts are not considered in determining duty to defend). This purported fact is a recitation of Plaintiff's altered theory of recovery, which was not alleged in the Counterclaim provided to Oak River. This purported fact of the altered theory was only asserted at a later date in the agreed-upon settlement, order, and judgment. Likewise, this purported fact is no fact at all. It is simply the recitation of certain allegations in Plaintiff pending First Amended Petition, which is not considered evidence appropriate to respond to a Motion for Summary Judgment.** *State of Neb. ex rel. Nelson v. Cent. Interstate Low-Level Radioactive Waste Comm'n*, **26 F.3d 77, 80 (8th Cir. 1994).**

12. Oak River conducted no investigation to learn what efforts MIG went through to comply

with Chapter 408 and the UCC.

**RESPONSE: Denied. This purported fact is not supported by citation. Doc 26-3 includes only a small portion of the claim file generated by Oak River. (Plaintiff conveniently neglected to provide the entirety of the claim file. The Court will note that Doc 26-3 skips from Bates No. Oak River 0004 to Oak River 00666.) Nothing in Doc 26-3 indicates that Oak River did not conduct an investigation. Oak River did conduct an investigation. Likewise, Oak River twice requested that MIG provide it with information relative to the claims made in the Counterclaim. On February 13, 2013, Oak River responded to MIG's insurance broker requesting: "If there are items pending in connection with [the Policies] that could affect the resolut[ion] of this loss, please immediately contact Claims Operations by fax to 402-916-3031 or by email to** claims@nationalindemnity.com" **Exhibit 1, attached, February 13, 2013 Fax. In March 15, 2013 correspondence to MIG and MIG's attorney, Oak River indicated: "Our position is based on the information we have received to date. If you know or learn of information not already provided to us, contact us immediately. Should additional suit papers be filed against Miller Investment, we ask you forward them to us to review. We will review all new information to assure Oak River fully performs its obligations under the Policies and applicable law."** *See* **Doc 24-6. MIG never provided any information to response to those requests.** *Id.*

13. Oak River ignored that a judgment could exceed its policy limits.

**RESPONSE: Denied. This purported fact is not supported by citation. Doc 26-3 includes only a small portion of the claim file generated by Oak River. (Plaintiff conveniently neglected to provide the entirety of the claim file. The Court will note that Doc 26-3 skips from Bates No. Oak River 0004 to Oak River 00666.) Nothing in Doc 26-3 indicates that Oak River did not consider the interests of MIG. Oak River did conduct an investigation. Likewise, Oak River twice requested that MIG provide it with information relative to the claims made in the Counterclaim. On February 13, 2013, Oak River responded to MIG's insurance broker requesting: "If there are items pending in connection with [the Policies] that could affect the resolut[ion] of this loss, please immediately contact Claims Operations by fax to 402-916-3031 or by email to claims@nationalindemnity.com" Exhibit 1, attached, February 13, 2013 Fax. In March 15, 2013 correspondence to MIG and MIG's attorney, Oak River indicated: "Our position is based on the information we have received to date. If you know or learn of information not already provided to us, contact us immediately. Should additional suit papers be filed against Miller Investment, we ask you forward them to us to review. We will review all new information to assure Oak River fully performs its obligations under the Policies and applicable law." *See* Doc 24-6. MIG never provided any information to response to those requests. *Id.***

**Moreover, this purported fact is immaterial to whether duty to defend given that this information was not known at the time the Counterclaim was presented to Oak River. *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 553 (Mo. 2014); *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 39 (Mo. Ct. App. 2007) (later discovered facts are not considered in determining duty to defend). At the time the Counterclaim was submitted to Oak River, no discovery had been conducted in the case and no demand had been made. No one, including Plaintiff or MIG, knew whether or not any judgment could exceed policy limits.**

14. Oak River limited its investigation to the question of coverage without considering the interests of MIG.

**RESPONSE: Denied. This purported fact is not supported by citation. Doc 26-3 includes only a small portion of the claim file generated by Oak River. (Plaintiff conveniently neglected to provide the entirety of the claim file. The Court will note that Doc 26-3 skips from Bates No. Oak River 0004 to Oak River 00666.) Nothing in Doc 26-3 indicates that Oak River did not consider the interests of MIG. Oak River did conduct an investigation. Likewise, Oak River twice requested that MIG provide it with information relative to the claims made in the Counterclaim. On February 13, 2013, Oak River responded to MIG's insurance broker requesting: "If there are items pending in connection with [the Policies] that could affect the resolut[ion] of this loss, please immediately contact Claims Operations by fax to 402-916-3031 or by email to claims@nationalindemnity.com" Exhibit 1, attached, February 13, 2013 Fax. In March 15, 2013 correspondence to MIG and MIG's attorney, Oak River indicated:**

8

"Our position is based on the information we have received to date. If you know or learn of information not already provided to us, contact us immediately. Should additional suit papers be filed against Miller Investment, we ask you forward them to us to review. We will review all new information to assure Oak River fully performs its obligations under the Policies and applicable law." *See* Doc 24-6. MIG never provided any information to response to those requests. *Id.*

15. Oak River denied coverage before investigation or before doing an adequate investigation.

**RESPONSE: Denied. This purported fact is not supported by citation. Doc 26-3 includes only a small portion of the claim file generated by Oak River. (Plaintiff conveniently neglected to provide the entirety of the claim file. The Court will note that Doc 26-3 skips from Bates No. Oak River 0004 to Oak River 00666.) Nothing in Doc 26-3 indicates that Oak River did not consider the interests of MIG. Oak River did conduct an investigation. Likewise, Oak River twice requested that MIG provide it with information relative to the claims made in the Counterclaim. On February 13, 2013, Oak River responded to MIG's insurance broker requesting: "If there are items pending in connection with [the Policies] that could affect the resolut[ion] of this loss, please immediately contact Claims Operations by fax to 402-916-3031 or by email to** claims@nationalindemnity.com**" Exhibit 1, attached, February 13, 2013 Fax. In March 15, 2013 correspondence to MIG and MIG's attorney, Oak River indicated: "Our position is based on the information we have received to date. If you know or learn of information not already provided to us, contact us immediately. Should additional suit papers be filed against Miller Investment, we ask you forward them to us to review. We will review all new information to assure Oak River fully performs its obligations under the Policies and applicable law." *See* Doc 24-6. MIG never provided any information to response to those requests. *Id.***

16. Oak River accepted legal conclusions as to coverage without legal citation or reference. *Id.*

**RESPONSE: Denied. This purported fact is not supported by citation. Doc 26-3 includes only a small portion of the claim file generated by Oak River. (Plaintiff conveniently neglected to provide the entirety of the claim file. The Court will note that Doc 26-3 skips from Bates No. Oak River 0004 to Oak River 00666.) Nothing in Doc 26-3 indicates that Oak River did not consider the interests of MIG. Oak River did conduct an investigation. Likewise, Oak River twice requested that MIG provide it with information relative to the claims made in the Counterclaim. On February 13, 2013, Oak River responded to MIG's insurance broker requesting: "If there are items pending in connection with [the Policies] that could affect the resolut[ion] of this loss, please immediately contact Claims Operations by fax to 402-916-3031 or by email to** claims@nationalindemnity.com**" Exhibit 1, attached, February 13, 2013 Fax. In March 15, 2013 correspondence to MIG and MIG's attorney, Oak River indicated: "Our position is based on the information we have received to date. If you know or learn of information not already provided to us, contact us immediately. Should additional suit papers be filed against Miller Investment, we ask you forward them to us to review. We will review all new information to assure Oak River fully performs**

its obligations under the Policies and applicable law." *See* Doc 24-6. **MIG never provided any information to response to those requests.** *Id.*

17. MIG defended the Underlying Litigation at its own expense for three years before agreeing to a class-wide settlement.

    **RESPONSE: Admitted.**

18. MIG relied upon the denial letter when defending and ultimately settling the law-suit.

    **RESPONSE: Denied. To the extent that Plaintiff implies that MIG relied upon the denial letter as a basis for Plaintiff's estoppel argument, this purported fact is denied. Plaintiff and his attorneys specifically drafted the agreed-upon Final Approval Order and attempted to address the issue of garage operations. See Doc 24-10, p. 7 ("… as part of operations necessary or incidental to MIG's garage business.")**

19. The Policies provide liability coverage for "any auto" (Symbol 21).

    **RESPONSE: Oak River admits that, subject to the terms and conditions of the Policies, Symbol 21 for Other Autos is listed on the Garage Form Declarations for liability coverage. However, contrary to Plaintiff's implication, providing liability coverage for "Any Autos" does not confer coverage for any potential liability related to any automobile. The liability coverage under the policy, for example, would not apply to damage unless it was for "'bodily injury' or 'property damage' to which this insurance applies caused by an accident." Here the Class alleged only violations of the UCC, and there are absolutely no allegations of bodily injury or property damage.**

20. The Policies liability coverage isn't limited to "Autos" left with MIG "for service, repair, storage or safekeeping." (Symbol 30). *Id.* at 8, 33.

    **RESPONSE: Oak River admits that Symbol 30 for "Autos Left With You For Service, Repair, Storage Or Safekeeping" is not listed on the Garage Form Declarations for liability coverage. However, contrary to Plaintiff's implication, providing liability coverage for "Any Autos" and not "Autos Left With You For Service, Repair, Storage Or Safekeeping" does not confer coverage for any potential liability related to any automobile. The liability coverage under the policy, for example, would not apply to damage unless it was for "'bodily injury' or 'property damage' to which this insurance applies caused by an accident." Here the Class alleged only violations of the UCC, and there are absolutely no allegations of bodily injury or property damage.**

10

## Introduction

Plaintiff's Suggestions confirm that Plaintiff and his attorneys have attempted to set up Oak River for more than $19 Million. Plaintiff's shell game worked as follows. Plaintiff filed a Counterclaim for statutory UCC violations as a class action, for which there was no insurance coverage under the garage policies.[1] After Oak River properly denied coverage, Plaintiff altered his theory of recovery in the agreed upon settlement and judgment, an alteration clearly designed to maximize the potential of insurance coverage. Neither Plaintiff nor MIG gave any notice to Oak River of the altered theory until after entering the consent judgment.

Plaintiff now claims that Oak River should have predicted his shell game and should have known that he would alter his theory of recovery. Plaintiff used similar tactics (claiming Oak River should have known what he denied) in seeking remand. The Court called the tactics "questionable" and "arguably frivolous," stating that they did not reflect well on Plaintiff's counsel. *See* Doc 25, p. 5-6. Yet, these tactics are the foundation of Plaintiff's case.

Plaintiff tries to put the onus on Oak River to conduct an investigation to show that it was impossible for Plaintiff to alter his theory of recovery while ignoring the obligation to notify Oak River of the altered theories.  Plaintiff could have easily asserted the altered theories in the original counterclaim or an amended counterclaim sent to Oak River. Instead, Plaintiff proceeded in a manner that was fundamentally unfair, contrary to Missouri law, and prejudicial to Oak River.  Of course, even had Plaintiff provided notice to Oak River regarding the class's altered theories, there was still no coverage under the Oak River policies because there were no allegations of bodily

---

[1] Plaintiff could have attempted to assert allegations (e.g.bodily injury or property damage) more likely to trigger coverage, but lucrative class action status likely would not have been available.  This is a common quandary for a class action practitioner also seeking insurance coverage. *See generally Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 614-615 (7th Cir. 2010) (discussing how underlying class action specifically tailored to achieve class action status prevented insurance coverage).

4815-4608-5465.5

injury or property damage to which the policies would apply. Oak River's Motion for Summary Judgment should be granted.

## Analysis and Argument

### A. Plaintiff Overstates the Standard to Determine a Duty to Defend

Plaintiff wrongly asserts that Oak River was required to conduct an investigation that showed it was impossible that the judgment could have been entered on theories not alleged in the Counterclaim. "The duty to defend is normally determined by comparing the policy language with the allegations in the complaint. But the insurer may not ignore actual facts, that is, facts which were known, or should have been reasonably apparent at the commencement of the suit." *Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 193 F.3d 966, 969 (8th Cir. 1999). That an insurer cannot ignore "actual facts":

> does not mean the insurer has an affirmative duty to conduct a far-reaching investigation of the facts underlying the third party's claims . . . . [I]f the insured later submits an amended pleading or additional facts that suggest the presence of covered claims, the insurer has an obligation to reconsider its refusal to defend.

*Id.* at fn.1. In other words, "[a]lthough Missouri law favors insured parties by determining an insurer's duty to defend based on whether certain facts give rise to a claim potentially within the policy's coverage, use of the word 'potentially' does not render boundless the duty to defend." *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 544 (8th Cir. 2012) (internal citations omitted).

In reviewing the duty to defend, the Court ignores facts/allegations that later emerged and focuses on the policy and the allegations in the underlying pleading:

> The obligation of the insurer to defend arises only as to claims and suits for damages covered by the terms of the policy. The plaintiff is the master of the petition, and if he or she does not seek covered damages, there is no duty to defend even if these facts could support such damages.

*Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 41 (Mo. App. 2007). Had an amended counterclaim been submitted to Oak River, Oak River would have had the obligation to reconsider its

4815-4608-5465.5

refusal to defend. Plaintiff deliberately omitted this step and never gave Oak River any opportunity to reconsider its position based on additional facts/allegations. Therefore, the Court cannot consider whether the altered theories would invoke a duty to defend. *Id.* at 39, fn. 3 ("Because [the insured] did not give [the insurer] notice of [claimant's] Amended Petition prior to entering a Section 537.065 agreement, we cannot consider whether the Amended Petition might have invoked a duty to defend.") Missouri law simply does not require a far-reaching investigation to rule out any potential legal theory that a claimant could allege in the future. Plaintiff's position would make the duty to defend "boundless," which the Eighth Circuit has specifically rejected.

Other courts have found that there is no duty to defend simply because there is the potential that the claimant could amend his legal theory in a future pleading. *See The Upper Deck Co., LLC v. Fed. Ins. Co.*, 358 F.3d 608, 615 (9th Cir. 2004) (potential of amendment to assert bodily injury does not confer duty to defend class action for RICO violations); *Connecticut Indem. Co. v. DER Travel Serv., Inc.*, 328 F.3d 347, 351 (7th Cir. 2003) (no duty to defend consumer fraud class action merely because under a covered claim for negligence could have been alleged).

In this case, Oak River properly conducted a reasonable investigation. It conducted a detailed review of the Counterclaim, analyzed the Installment Contract and Security Agreement between Plaintiff and MIG, and analyzed the numerous Policies issued to MIG. Oak River also twice specifically requested that MIG provide Oak River with any additional information and advised that it would review all new information to make sure it fully performed its obligations to MIG.

MIG never provided either additional information or Plaintiff's altered theory of recovery. Even when Plaintiff and MIG were in cahoots, they did not provide notice of the proposed order that contained the additional information/allegations. Plaintiff expects Oak River to read the Counterclaim with unreasonable breadth such that it could have predicted the altered theory and new allegations,

13

such as negligence or that MIG's attorneys may gave committed malpractice (as MIG no claims). These steps go far beyond the scope of a reasonable investigation; this argument should be rejected.

## B.     Estoppel Does Not Apply

Plaintiff argues that Oak River is estopped from asserting that the actual Counterclaim did not result from garage operations. This argument is incorrect. Plaintiff vastly overstates the holding in *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 386 (Mo. 1989). There, the Missouri Supreme Court held that estoppel did not bar an insurer from asserting a defense not explicitly referenced in the initial denial letter. This is because estoppel applies "only where an insurer raised inconsistent defenses and, by raising inconsistent defenses, caused prejudice to the insured." *Cedar Hill Hardware & Const. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 342 (8th Cir. Mo. 2009).

Oak River never raised any inconsistent defenses. The denial letter referred to the insuring agreement (requiring damages for bodily injury or property damage caused by an accident and resulting from garage operations). The defense that the Counterclaim does not satisfy the insuring agreement because there was no accident, bodily injury or property damage is consistent with the defense that the Counterclaim does not satisfy the insuring agreement because it asserts claims for pecuniary loss only (rather than bodily injury or property damage) and does not result from garage operations. Furthermore, Plaintiff cannot demonstrate prejudice. Plaintiff specifically drafted the agreed-upon Final Approval Order and attempted address this defense. *See* Doc 24-10, p. 7 ("… as part of operations necessary or incidental to MIG's garage business.") Thus, even if the defense could be deemed inconsistent, there was no prejudice to Plaintiff.

## C.     Financing Activities Are Not Necessary and Incidental to a Garage Business

Plaintiff's assertion that repossession of a vehicle is necessary and incidental to a garage business is neither persuasive nor supported by case law. Not surprisingly, Plaintiff ignores *Wolfe*

*Auto. Grp., LLC v. Universal Underwriters Ins. Co.*, 808 F.3d 729, 730 (8th Cir. 2015), which squarely addresses this issue. *Wolfe* holds that alleged violations related to UCC notices are not within the meaning of repossession. Rather, violations of the UCC notice provisions result from debt collection practices. Thus, Plaintiff's argument that UCC violations are incidental to the garage business of a used car dealer as repossessions is contrary to Eighth Circuit precedent. Debt collection is simply not necessary or incidental to the garage business of a used car dealer. As the Eighth Circuit found in *Wolfe*, UCC violations for debt collection constitute an activity associated with financing activities.

Moreover, coverage under the Policies is not illusory simply because MIG was a used car dealer that did not repair vehicles. The Policies would provide coverage for a host of scenarios other than debt collection, *e.g.* an employee involved in an accident while operating a vehicle on a test drive. Indeed, Plaintiff's cited authority, *Rinehart v. Anderson*, 985 S.W.2d 363, 370 (Mo. Ct. App. 1998), demonstrates this point: employees were involved in accident while delivering a customer's car. The Garage Policies issued to MIG are simply not designed to cover these debt collection and financing activities.[2] MIG's being a used car dealer that happens to directly finance vehicles does not transform a garage policy to cover all aspects of MIG's financial-servicing business. Furthermore, the Policies undoubtedly only apply to the services necessary or incidental to a "garage" business. The plain meaning of the term "garage" means "a commercial establishment for repairing and servicing motor vehicles"[3] or "a shelter or repair shop for automotive vehicles."[4] The Policies do not confer coverage to all aspects of MIG's business.

---

[2] If MIG did not service or repair vehicles such that it believed it did not require a garage policy, it should not have purchased these types of Policies. Conversely, if MIG wished to purchase policies that covered debt collection and financing activities, it should have requested that type of coverage from its broker.
[3] http://www.dictionary.com/browse/garage?s=t
[4] https://www.merriam-webster.com/dictionary/garage

**D. There Was No Bodily Injury or Property Damage Alleged**

The Counterclaim presented to Oak River did not allege any bodily injury or property damage as defined by the Policies, nor ***did it allege loss of use of the vehicles themselves***. Instead, according to the later-drafted documents, the damages were for "loss of use" of "Class member's surplus funds" and money paid by Class members. This is not loss of use of tangible property. Plaintiff argues that this loss of use was of an "identifiable fund of money." However, that is not tangible property (or property damage as defined).

Plaintiff's citation to *Hortica-Florists' Mut. Ins. Co. v. Pittman Nursery Corp.*, 729 F.3d 846, 857 (8th Cir. 2013) is misleading. The district court in that case specifically held that the only reason the loss of money was considered property damage was because it involved specific, identifiable, physical cash. *Hortica-Florists' Mut. Ins. Co. v. Pittman Nursery Corp.*, No. 07-CV-1119, 2010 WL 749368, at *5 (W.D. Ark. Mar. 2, 2010). Indeed, the district court noted "the right to receive money and the loss of that right does not constitute the loss of use of tangible property. However, once money is in its tangible form, many jurisdictions consider it tangible property." *Id.* Unlike this case, the loss of use in *Hortica* involved physical cash. Plaintiff did not allege (and the underlying agreed-upon sham judgment did not find) that tangible, physical cash was lost. Thus, Plaintiff cannot demonstrate property damage in this case.

Furthermore, Plaintiff's citations to *Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258 (Mo. 2013) and *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 878 (8th Cir. 2005) are inapposite. Those cases concerned TCPA statutory penalties for loss of use of telephone equipment. Here, Plaintiff (eventually) sought loss of use of money.

16

Even if the Court were to deem the financial loss alleged in the Class Action to be "damage to or loss of tangible property," (which it should not) the loss of use exclusion discussed in F. below applied to preclude coverage. Plaintiff's counterclaim failed to trigger coverage.

## E.     Lack of an Accident

Plaintiff's argument that the Counterclaim demonstrated an accident also fails. The Counterclaim itself shows why Oak River did not consider the Counterclaim one for negligent misrepresentation. Nowhere in the Counterclaim are the words negligent or misrepresentation found. Plaintiff could have pleaded a claim for negligent misrepresentation. Instead, the Counterclaim states that Plaintiff was "seeking relief to redress an unlawful and deceptive pattern of wrongdoing" by MIG. *See* Doc 24-4, p. 2. That is the description of intentional conduct that does not constitute negligence or an accident.

Plaintiff relies upon *First Cmty. Credit Union v. Levison*, 395 S.W.3d 571 (Mo. Ct. App. 2013)[5] for the proposition that the Counterclaim is one of "misrepresentation" that Oak River should have foreseen as a claim for negligent misrepresentation. Plaintiff's argument is disingenuous. The *Levinson* Court described a counterclaim for "an unlawful and deceptive pattern of wrongdoing" as "***fraud/misrepresentation***." *Id*. at 580. Negligence is never mentioned. At best, *Levison* stands for the proposition that the Counterclaim be considered a claim for fraudulent misrepresentation. Of course, claims for fraud and fraudulent misrepresentation are not accidents for the purpose of insurance coverage under Missouri law. *Hartford Ins. Co. of the Midwest v. Wyllie*, 396 F. Supp. 2d 1033, 1038 (E.D. Mo. 2005).

---

[5] Plaintiff's counsel also notifies the Court that it was counsel for the consumer in *Levison*. If anything, this fact supports a finding that counsel was attempting the same sort of impermissible tactics to try to create coverage as counsel used to try to stay out of this Court.

4815-4608-5465.5

Moreover, Plaintiff's citation to *HIAR* is again misleading. The Counterclaim does not suggest that MIG negligently violated a statute. Unlike the TCPA violations at issue in *HIAR*, MIG intended to send the notices that it did – the acts that caused injury. In other words, regardless of whether the notices complied, MIG intended sending the notices in order to collect on loans.

Furthermore, *Landers* is directly on point. In that case, the Eighth Circuit held:

> [T]he plain language of the word "accident" when read in context with the garage policy … makes it clear the policy refers to physical accidents as opposed to accounting errors. Second, the claims against Landers do not arise from the accounting errors but from intentional acts taken by Landers with respect to its rights and obligations under the financing agreement, that is, the repossession of the car and alleged failure to negotiate in good faith. Those are intentional acts that would not fit the ordinary definition of an accident.
> *Landers* at 815.

Thus, the claims for wrongful repossession and violations of the Arkansas Deceptive Trade Practices Act were not an accident under a garage operations policy. Plaintiff's claims in the Counterclaim are equally far from being an "accident."

## F.     Exclusions for Expected or Intended Injury and Loss of Use Exclude Coverage

For the same reasons, the expected or intended injury exclusion applies. *See Landers* at 815. Even given its broadest reading, the Counterclaim never alleges that MIG violated the UCC only because its attorneys drafted improper notices. The Counterclaim alleged "an unlawful and deceptive pattern of wrongdoing," or – as *Levison* described it – "fraud/misrepresentation." Plaintiff's claim that an investigation would have revealed that this "unlawful and deceptive pattern of wrongdoing" was actually a claim for negligent misrepresentation based on MIG's attorneys' drafting must be rejected. The record reveals that Oak River asked both MIG and MIG's attorneys specifically that they provide "any information not already provided to us" and "additional suit papers," noting that Oak River would review all new information in order to perform its obligations. ***MIG and MIG's***

*lawyers never provided any information in response*. Further investigation would have uncovered nothing.

The loss of use exclusion also applies to bar coverage. Plaintiff's suggestion that *Levison* prevents the exclusion from being applicable is incorrect. *Levison* did not consider insurance coverage; *Levison* considered the compulsory counterclaim rule under Missouri civil procedure. More on point, in *Landers*, the Eighth Circuit held that an identical loss of use exclusion in a garage policy applied to bar coverage for claims that arose from financing agreements. *See also New Hampshire Ins. Co. v. Hill*, 2012 WL 3685500 (S.D. Ala. Aug. 23, 2012), *aff'd*, 516 F. App'x 803 (11th Cir. 2013). Even if there was property damage, this exclusion precludes coverage for "loss of use of other property not physically damaged <u>if caused by</u>: a. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." By its terms the Counterclaim included as a class only those persons "who are named as borrowers or buyers on a loan or financing agreement entered into with MIG." *See* Doc 24-4, p. 6. Plaintiff also specifically alleged: "Shelby's and the class' rights **derive from written form contracts**." *Id.* (emphasis supplied). It necessarily follows that the alleged loss of use was caused by the failure to perform the contracts from which Plaintiff claimed his rights derived.

## G. Because There is No Duty to Defend, There is No Duty to Indemnify

Because an insurer's duty to defend is broader than the duty to indemnify, it is black letter Missouri law that when there is no duty to defend there is no duty to indemnify. *United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, 751 F.3d 880, 883 (8th Cir. Mo. 2014). The Counterclaim neither included the term negligence (in any form), nor did it plead the elements of a claim for bodily injury, property damage or negligent misrepresentation.[6] The *Levison* Court's description of Plaintiff's

---

[6] "Negligent misrepresentation requires the plaintiff to plead that: (1) the defendant supplied information in the course of its business or because of some other pecuniary interest; (2) due to the defendant's failure to exercise reasonable

4815-4608-5465.5

boilerplate counterclaim as "fraud/misrepresentation" does not require that Oak River read the Counterclaim as a claim for negligent misrepresentation. At most, it would suggest that Plaintiff asserted fraudulent misrepresentation, which is not a covered claim. If Plaintiff wanted Oak River to view the Counterclaim as a claim for negligent misrepresentation, he should have alleged negligent misrepresentation. Oak River should not be expected to predict the innumerable ways in which Plaintiff could have altered his theory of recovery. Even if Plaintiff had provided Oak River with notice of his altered theories, the outcome would be the same as Plaintiff did not assert any claims for bodily injury or property damage. Therefore, there is no duty to defend and no duty to indemnify the judgment.

## Conclusion

In sum, nothing in Plaintiff's opposition should dissuade the Court from granting summary judgment to Oak River. Plaintiff has engaged in a concerted effort to game the judicial system and distort Missouri law, pretending that Oak River was required to predict the future and view the Counterclaim for something it was not. Oak River cannot be liable for the judgment predicated on altered theories of recovery of which it was never timely notified and by which it was prejudiced. This Court should grant summary judgment.

---

care or competence in obtaining or communicating this information, the information was false; (3) the defendant intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) the plaintiff justifiably relied on the information; and (5) as a result of the plaintiff's reliance on the statement, the plaintiff suffered a pecuniary loss." *Wyllie* at 1037.

4815-4608-5465.5

Respectfully submitted,

By: _s/ M. Courtney Koger_
M. Courtney Koger     MO Bar # 42343
Kevin D. Brooks      MO Bar # 57627
KUTAK ROCK LLP
Two Pershing Square
2300 Main Street, Suite 800
Kansas City, MO 64108
(816) 960-0090 (Telephone)
(816) 960-0041 (Facsimile)
Courtney.Koger@KutakRock.com
Kevin.Brooks@KutakRock.com
**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

     I hereby certify that the foregoing was served on the 29th day of December, 2017 via the Court's electronic filing system, which will provide a copy to all counsel of record in this matter.

_s/ M. Courtney Koger_
ATTORNEY FOR DEFENDANT

4815-4608-5465.5