IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| QUENTON SHELBY, Individually and on Behalf of Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OAK RIVER INSURANCE COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) No. 4:17-cv-0224-DGK |

## ORDER GRANTING SUMMARY JUDGMENT

This lawsuit is an attempt to recover on an uncontested judgment entered in state court. This dispute originated in a separate lawsuit ("the underlying litigation") brought by a used car dealer, Miller Investment Group ("MIG"), against Plaintiff Quenton Shelby ("Shelby") for a deficiency on his secured car loan. In response to MIG's suit, Plaintiff filed a class-action counter-claim alleging MIG violated the UCC and engaged in a deceptive pattern in repossessing cars. MIG subsequently entered into a class-wide settlement with Plaintiff and assigned any claims it had against its insurers to Plaintiff and the other class members. Plaintiff subsequently filed this lawsuit seeking to recover under insurance policies issued by Defendant Oak River Insurance Company ("Oak River") for a "garage business."

Now before the Court is Oak River's motion for summary judgment (Doc. 23). Holding that Oak River owed no duty to defend or indemnify MIG because the underlying claims did not stem from "garage operations," the motion is GRANTED.

### Summary Judgment Standard

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). The nonmoving party may resist summary judgment by asserting affirmative defenses, but it must support these defenses with specific facts. *Hiland Partners GP Holdings, LLC v. Nat'l Union Fire Ins. Co.*, 847 F.3d 594, 601 (8th Cir. 2017).

## Undisputed Facts

For purposes of resolving this motion, the Court finds the material, undisputed facts to be as follows.[1] The Court acknowledges the parties submitted numerous other facts which are relevant to Oak River's many arguments concerning summary judgment. Because the Court holds Oak River's first argument is dispositive, it includes only those facts relevant to its first argument.

**The Policies**

Oak River issued a series of Commercial Garage Liability Policies to MIG from 2008 to 2013 ("the Policies"). The policy terms at issue in this litigation are the same in all of the Policies.

The Declarations page of the Policies accurately described MIG's business as a used car dealer. The Insuring Agreement stated that Oak River will "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' . . . caused by an 'accident' and resulting from 'garage operations' . . . ."

The Policies defined "garage operations" as:

> the ownership, maintenance, or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in Section I of this

---

[1] The Court has limited the facts presented here to those that are not in dispute and relevant to its disposition of the motion. The Court has excluded legal conclusions, argument presented as fact, and proposed facts that are not properly supported by admissible evidence. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). The Court has included reasonable inferences from material facts not in dispute and proposed facts the opposing party has not controverted properly.

2

coverage form as covered "autos." "Garage operations" also include all operations necessary or incidental to the performance of "garage operations."

**The Underlying Litigation**

MIG is a used car dealer with locations in Kansas and Missouri which also finances purchases for its customers. MIG sells used cars to many customers by having the customer enter into a retail installment contract and security agreement.

Shelby purchased a car from MIG and entered into a form retail installment contract and security agreement for that purpose ("the security agreement"). Shelby allegedly failed to make payments as required under the security agreement, and so MIG accelerated Shelby's payments, repossessed the car, and initiated the underlying litigation against Shelby seeking the deficiency balance.

In response, Shelby filed a one count class action counterclaim against MIG alleging that MIG failed to comply with the UCC. The counterclaim specifically alleged that after repossessing his car, MIG sent Shelby and numerous other class members presale notices, a/k/a notices of sale, that did not comply with the UCC adopted by each class member's state.[2] The counterclaim primarily concerned the presale notices,[3] although it included other UCC

---

[2] The counterclaim also alleged the notices of sale failed to include an accounting of the alleged deficiency; failed to include contact information for the debtor to use to obtain more information about the sale; failed to disclose the amount MIG received at the sale; failed to properly describe potential liability for deficiency; failed to state the amount necessary to redeem the collateral; and failed to properly identify the debtor. It also contended the notices failed to provide an accounting of the unpaid indebtedness and to state the charge, if any, for such accounting; failed to list the address or telephone number for the debtor to call or write if they needed more information about the sale; failed to properly provide a "description of any liability for a deficiency" after sale because the notice did not specify that the money MIG received from the sale of the collateral (after paying costs) would reduce the amount they owed and that if the sale proceeds exceeded the loan balance that MIG would pay the surplus to the debtor; failed to properly describe the debtor because it did not list the debtor's address; and misstated the amount necessary to redeem the collateral. Finally, the counterclaim alleged the notices of sale were not "reasonably authenticated."

[3] It stated, "The principal legal question common to Shelby and each class member is whether the presale notices, including Notice of Sale, sent by MIG . . . complied with the UCC;" "[t]he violation alleged by Shelby and the class derives from written form presale notices that fail to comply with the UCC;" "Shelby and each member of the class were damaged and are entitled to recover statutory minimum damages due to MIG's failure to provide proper

3

violations.  The counterclaim did not contain any claim for negligence,[4] nor did it allege causes of action for wrongful repossession, libel, slander, defamation, or invasion of privacy.  The counterclaim sought "statutory minimum damages in the amount provided by § 9-625(c)(2) of the UCC," damages equal to the "time price differential, delinquency and collection charges" under § 365.145 Mo. Rev. Stat., and prejudgment interest.  It also sought declaratory and injunctive relief, including "[a] declaration that the presale notice sent by MIG to Shelby and the class fails to comport with the provisions of the UCC."

The state court certified a class consisting of all persons: (1) who were named borrowers on a consumer loan or financing agreement with or assigned to MIG; (2) whose loan was secured by collateral; (3) whose collateral was repossessed or voluntarily surrendered; and (4) whose collateral was disposed of from January 10, 2008, to April 21, 2015.

On February 11, 2013, MIG forwarded the counterclaim to Oak River, along with other documents from the underlying litigation.

**Oak River's Denial Letter**

On March 15, 2013, Oak River sent MIG a letter advising that it was denying coverage for the counterclaim.  This denial letter stated the claims did not come within the definitions of "accident," "bodily injury," and "property damage."  Also, the letter quoted language from the Policies stating "[w]e will pay all sums . . . to which this insurance applies caused by an 'accident' and resulting from 'garage operations,'" but it did not state Oak River was denying coverage because the damages did not come within the definition of "garage operations."  The

---

presale notices under the UCC and MIG's improper sales of repossessed collateral thereunder;" and "Shelby and each member of the class will rely on the same basic evidence (i.e. the form presale notices.)".

[4] Shelby objects that this statement of fact calls for a legal conclusion.  Given that the words "negligence" and "negligent" (or their equivalents) do not appear anywhere in the counterclaim, it is a statement of fact that the counterclaim does not assert a claim for negligence.

4

closing paragraph of the letter cautioned, "reference to specific provisions of the Policies are not a waiver of our rights under any other provision of the Policies," and that, "Oak River may at any time assert any of these additional rights or defenses."

MIG did not respond to Oak River's March 15, 2013 letter. MIG defended the underlying litigation at its own expense for three years before agreeing to settle. It did not communicate with Oak River regarding the underlying litigation from March 15, 2013 to July 19, 2016.

### The Class Action Settlement

On December 22, 2015, MIG and Shelby filed their Joint Motion for Preliminary Approval of Class Action Settlement in the underlying litigation. The proposed settlement agreement ("the Agreement") required MIG to take various actions. Among other things, it required MIG to agree that it:

> . . . will not contest a judgment being entered against it in an amount to be determined by the Court, comprising damages for wrongful repossession, libel/slander/defamation, invasion of privacy, and other uncertain or hard to quantify damages, plus pre-judgment interest and post-judgment interest. Shelby will seek a judgment equal to the statutory damages provided in § 9-625, the time price differential ("finance charge") paid by the Settlement Class, plus prejudgment interest and post-judgment interest. The judgment shall indicate only $450,000 may be satisfied from MIG's assets for its obligations required under this Agreement and any remaining amount may only be satisfied from MIG's insurance policies in effect during the class period.

On March 4, 2016, MIG and Shelby appeared by counsel for a hearing on final approval hearing of the class settlement. At the hearing, the court heard a summary of damages presented by Shelby's attorney. Through counsel, Shelby argued that "[MIG] admitted that the UCC notices and other notices that they had sent were defective . . . So, based on those notices, the

5

UCC provides a statutory formula for those damages." He asserted the damages totaled $14,884,019.13, as follows:

| | |
|---|---|
| § 400.9-625 ("credit service charge damages") | $8,144,020.71 |
| § 400.9-625 (10% of principal) | $2,183,597.14 |
| § 400.9-625 ($500 per defective notice) | $1,174,500.00 |
| §§ 365.150 & 408.562 (time price differential) | $3,381,901.28 |

He argued that with pre-judgment interest on the statutory damages, the damages totaled $4,117,776.03. Shelby did not seek damages for wrongful repossession, libel, slander, defamation, invasion of privacy, or other uncertain or hard to quantify damages.

Shelby's proposed order approving the settlement, which the court entered, included the following paragraph:

> 6. Damages. MIG agreed not to contest a judgment being entered against it in an amount to be determined by the Court. The Court determines the Settlement Class has *compensatory* damages of $19,001,795.17 resulting from MIG's *negligent* conduct in failing to send notices complying with Missouri Chapter 408 and the Uniform Commercial Code as part of operations necessary or incidental to MIG's garage business. MIG did not intend to violate Chapter 408 or the UCC and did not intend injury to the class because it believed its notices were accurate, lawful and contained no misrepresentations. However, the *negligent* misrepresentations in the notices were the proximate cause of the loss of the vehicles because it precluded the Class members from reclaiming their collateral before it was sold. *Mancuso v. Long Beach Acceptance Corp.*, 254 S.W.3d 88, 92 (Mo. App. 2008) (purpose of notice is to allow consumer to reclaim collateral). The *negligent* misrepresentations in the notices were also the proximate cause of the loss of use of the: (a) Class member's surplus funds owed them after the sale of the collateral; and (b) the money each Class member paid, which was barred by statute and common law.

6

(Emphasis added.). The court entered judgment against MIG in the amount of $19,001,795.17, the amount of statutory damages and pre-judgment interest sought by Shelby in the hearing.[5]

Prior to entry of the judgment, the only legal theories for recovery that MIG had made Oak River aware of were those set forth in the counterclaim. The first time Oak River became aware that Shelby's claims could possibly include negligence was in 2016, when it obtained a copy of the judgment.

After settling the class action claims, MIG filed a legal malpractice suit against the attorneys who drafted the pre-sale notices. MIG described Shelby's counterclaim as seeking "statutory damages related to the failure of the pre-sale notice to follow the requirements and make the specific disclosures required under sections of the Uniform Commercial Code." MIG asserted that it "had no defense to the Counterclaim. The pre-sale notice provided by [its attorneys] did not conform to the statutory requirements of the Uniform Commercial Code. The Counterclaim was akin to 'shooting fish in a barrel.'" MIG also asserted "[the attorneys'] obvious malpractice left [MIG] with no choice but to enter into a Class Action Settlement, which received court approval in March 2016."

Shelby has now sued Oak River for breach of the duty to defend and equitable garnishment, alleging that it breached its duty to defend MIG in the underlying litigation.

## Discussion

Oak River moves for summary judgment on numerous grounds, primarily that: (1) MIG's claim did not result from "garage operations" under the Polices; (2) there was no coverage because the damages are for UCC statutory damages, not for "bodily injury" or "property damage;" (3) there was no "accident" as defined by the Policies; (4) the claims are excluded

---

[5] $14,884,019.13 (statutory damages) + $4,117,776.03 (pre-judgment interest) = $19,001,795.16. The parties agree the $0.01 difference between these amounts is an immaterial mathematical error.

under language concerning "expected or intended injury" an "loss of use" of property damaged by an insured's failure to perform a contract or agreement; (5) Oak River was never given notice of any claim alleging negligence; (6) even if it had been, negligent conduct in failing to send notices complying with Missouri law was not part of MIG's "garage operations;" and (7) even if coverage were available, recovery is limited to $1,000,000 under the Policies.

The Court holds Oak River's argument concerning "garage operations" is dispositive and does not address its remaining arguments.

**I.      Oak River owed no duty to defend or indemnify MIG because the underlying claim did not result from "garage operations."**

The Polices cover "bodily injury" or "property damage" caused by an "accident" resulting from "garage operations." "Garage operations" is defined as "the ownership, maintenance, or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations," including "all operations necessary or incidental to the performance of garage operations." In construing the terms of an insurance policy, a court applying Missouri law gives the term the meaning which an ordinary person of average understanding who is purchasing insurance would attach to the language, and resolves ambiguities in favor of the insured. *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010). "Garage operations" as used in the Policies covers a variety of activities, such as repairing cars, test driving cars, and parking cars, but it does not include UCC violations or repossession activities. These acts relate to financing, not garage operations. Thus the Policies do not cover—indeed, could not possibly cover—the claims made against MIG in the underlying litigation.

This holding is supported by controlling Eighth Circuit caselaw. In *Landers Auto Group No. One, Inc. v. Continental Western Insurance Co.*, the Eighth Circuit held that nearly identical policy language regarding garage operations did not cover an auto dealership's losses arising

from a lawsuit alleging wrongful repossession, conversion, and violations of the Arkansas Deceptive Trade Practices Act. It reasoned that this activity was "not an activity associated with operation of a garage but of the financing activities of the dealership." 621 F.3d 810, 811-12, 814 (8th Cir. 2010). Other jurisdictions have reached the same conclusion. *See, e.g., N. Carolina Farm Bureau Mut. Ins. Co. v. Weaver*, 517 S.E.2d 381, 384 (N.C. Ct. App. 1999) (holding forcible repossession of a car by repair shop employees does not fall within the definition of "garage operations").

Shelby's claim that Oak River is estopped from raising this coverage defense is unavailing. Shelby argues Oak River is estopped because its denial of coverage letter did not assert that the damages did not come within the definition of "garage operations," and MIG was prejudiced because it detrimentally relied on the letter in "preparing to meet those issues and in deciding to consent to a judgment against it." Opp'n at 26 (Doc. 26).

Under Missouri law, an insurer which announces a specific defense to an insured's claim in a denial letter can be estopped from subsequently relying on an *inconsistent* theory if the announcement "lulls" the insured into relying on the insurer's statement to his detriment. *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 388-89 (Mo. 1989). But an insurer is not estopped from later asserting another defense to an insured's claim so long as the insurer has not made a statement excluding other defenses which the insured reasonably relied upon in preparing the claim. As the Eighth Circuit put it, estoppel applies "only where an insurer raised *inconsistent* defenses and, by raising inconsistent defenses, caused prejudice to the insured." *Cedar Hill Hardware & Const. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 342 (8th Cir. 2009) (emphasis added).

In this case, Oak River has not asserted an inconsistent defense, nor has MIG been prejudiced. The denial letter stated coverage did not exist because there was no "accident," "bodily injury," or "property damage." Subsequently, in this litigation, Oak River added to this list of defenses by arguing that the claims also did not result from "garage operations." Oak River's defense is not inconsistent with these. In fact, the addition of this defense is perfectly consistent with the language in the denial letter cautioning that Oak River was not waiving its rights "under any other provision of the Policies," and that it might assert such rights at some later time.

Even if this defense were somehow inconsistent with those claimed in the denial letter, there has been no prejudice. Far from being caught flat-footed by Oak River's defense, Shelby was well aware of it. Indeed, his attorneys attempted to thwart this potential defense by including in the proposed order approving the settlement language describing the damages as "compensatory" damages resulting from MIG's "negligent conduct . . . as part of operations necessary or incidental to MIG's garage business." Hence, Oak River is not estopped from raising it.

Because the Court holds the claims in the underlying litigation do not result from "garage operations," there is no coverage under the Policies, and Oak River is entitled to summary judgment.

## Conclusion

Oak River's motion (Doc. 23) is GRANTED.

**IT IS SO ORDERED.**

Date:  April 30, 2018     /s/ Greg Kays
                          GREG KAYS, CHIEF JUDGE
                          UNITED STATES DISTRICT COURT